UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELAINA J. PETERS,

    Plaintiff,

v.                                              Case No. 1:19-cv-72
                                                  Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

This case has a lengthy history as set forth by the administrative law judge (ALJ):

A review of the evidence shows the claimant has applied for disability insurance benefits and supplemental security income on a prior occasion. The claimant filed an application for Title II and Title XVI benefits on July 3, 2013 that was denied initially and in a hearing decision on August 13, 2015 (Exhibit 5A). The claimant appealed this decision asking the Appeals Council to review the decision. The request for review of the decision was denied (Exhibit 6A).

The claimant appealed this decision asking the United States District Court to review the decision. The United States District Court reversed and remanded the case to the Commissioner of Social Security on November 30, 2017 (Exhibit 11A-13A). The Appeals Council vacated the final decision of the Commissioner of Social Security on May 19, 2018 and remanded the case to me for further proceeding consistent with the order of the court for resolution of the issues (Exhibit 14A).

Pursuant to the District Court remand order, the Appeals Council has directed me to re-evaluate the opinion of Christopher Marquart, M.D.

> Additionally, the claimant filed a subsequent claim for Title II and Title XVI benefits on September 29, 2016 and September 30, 2016. The Appeals Council's action with respect to the current claim renders the subsequent claims duplicate. Therefore, I will associate the claim files, offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision on the associated claim (Exhibit 20 CFR 404.952 and 416.1452 and HALLEX 1-1-10-10).

PageID.117.

On remand, the ALJ reviewed plaintiff's claim *de novo*, held an administrative hearing on September 10, 2018 (PageID.142-164), and entered a partially favorable written decision on October 1, 2018 (PageID.117-131).  In this decision, the ALJ found that plaintiff was disabled beginning on July 9, 2016.  PageID.130.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.     LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact

that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

The ALJ found that plaintiff was disabled as of July 9, 2016, when plaintiff's age category changed under the medical-vocational rules. PageID.130. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 9, 2012, and met the insured status requirements of the Social Security Act through March 31, 2017. PageID.120. At the second step, the ALJ found that since the alleged onset date, plaintiff had severe impairments of: lumbar degenerative disc disease, status post microdiscectomy; cervical degenerative disc disease; bone spurs; obesity; and, chronic obstructive pulmonary disease (COPD). PageID.120. At the third step, the ALJ found that since the alleged onset date of disability, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.122.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that since April 9, 2012, the claimant has the residual functional capacity to perform sedentary work

4

>   as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally climb ramps and stairs; never ladders or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; occasional use of foot controls; occasionally push and pull with the upper extremities; occasionally reach overhead; frequently reach in other directions; frequently handle, finger and feel; no exposure to extreme cold, wetness, humidity or pulmonary irritants; no exposure to vibration or unprotected heights; and can perform simple, routine tasks.

PageID.123. At this step, the ALJ also found that plaintiff was unable to perform any past relevant wok. PageID.128.

At the fifth step, the ALJ found that prior to July 9, 2016, the plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.129-130. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary and unskilled occupations in the national economy including final assembly positions (125,000), machine tender positions (100,000), and inspector positions (120,000). PageID.129-130. Accordingly, the ALJ determined that plaintiff was not under a disability prior to July 9, 2016. PageID.129.

The ALJ also found that beginning on July 9, 2016, the date plaintiff's age category changed, no jobs exist in significant numbers in the national economy that she could perform, finding that "Beginning on the date the claimant's age category changed, considering the claimant's age, education, and work experience, a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 201.14." PageID.130.[1] Accordingly, plaintiff was not disabled prior to July 9, 2016, but became disabled on that date and continued to be disabled through the date of the decision. PageID.130-131.

### III. DISCUSSION

---

[1] Rule 201.14 addresses an individual who is "closely approaching advanced age." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(g) ("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.").

Plaintiff set forth two issues on appeal:

### A.     The ALJ mishandled plaintiff's complaints[2]

### 1.     The ALJ's errors

In her appeal, plaintiff seeks a reversal of the ALJ's decision, a remand "for reconsideration free of the errors pointed out herein," and an award of DIB benefits. PageID.1705. Plaintiff claims that the ALJ mishandled her "complaints," by which she means her "reported symptoms and limitations." PageID.1694. In determining plaintiff's residual functional capacity (RFC), the ALJ stated that "I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p" and that "I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." PageID.123.

After reviewing plaintiff's claims and the medical evidence, the ALJ concluded that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or [sic] her symptoms, they are inconsistent because the totality of the evidence tells me that the claimant's subjective complaints exceed the available objective records, prior to the established onset date.
>
> Imaging of the lumbar and cervical spines showed some objective findings. While the claimant has some pain and some side effects from her medications, longitudinally, the record reflects that surgical intervention, injection therapy and prescribed medications provided some symptom relief (Exhibits 7F; 8F/6-7; 12F/3; 13F/6-7, 8-10; 20F/2-4; 22F/19-22).
>
> While she alleged she needed to lie down most of the day, I note that no evidence from any treating or examining physician established that the claimant had a medically required need to lie down frequently during the day prior to the

---

[2] The Court does not consider plaintiff's first error to be a "specific error of fact or law upon which Plaintiff seeks reversal or remand" as required by the Court's directive on briefing. *See* Notice (ECF No. 5). Rather, as discussed, *infra*, plaintiff has presented a series of arguments contesting numerous matters addressed by the ALJ.

> established onset date. As such, I find the above factors are not consistent with the claimant's subjective pain and functional limitation reports.
>
> Collectively, these factors were somewhat inconsistent with the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms and further support the conclusion that the claimant is able to work in accordance with the above residual functional capacity, prior to July 9, 2016 the established onset date (20 CFR 404.1529 (c)(3); 416.929(c)(3) and SSR 16-3p).

PageID.126-127.

The gist of plaintiff's claim is that the ALJ failed to follow a "three-part decision tree" (consisting of corroboration, consistency, and "other factors") and that due to this failure, the ALJ did not properly reject any of her complaints. *See* Plaintiff's Brief (ECF No. 9, PageID.1693-1695). An underlying theme in plaintiff's claim is that the ALJ "is unaware of the regulatory definition of 'inconsistent'". *See* Plaintiff's Brief (ECF No. 9, PageID.1696-1702).

Plaintiff presents a list of alleged errors committed by the ALJ which arose due to the ALJ's failure to apply the "three-part decision tree."

1. Plaintiff contends that the ALJ failed to identify her particular complaints, identify the evidence inconsistent with the complaints, explain how the evidence conflicts, and "explain why the inconsistency was resolved one way rather than the other." Plaintiff's Brief (ECF No. 9, PageID.1696-1697).

2. Plaintiff rejects the ALJ's summary of the medical evidence because it "does not fulfill the ALJ's duty to state and explain his reasons for rejecting a claimant's complaints." *See* PageID.1697-1699.

3. Plaintiff rejects the ALJ's "boilerplate paragraph" regarding the limiting effects of her symptoms, *i.e.*:

> After consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence

7

> and limiting effects of these symptoms are not fully supported for the reasons explained in this decision[.]

PageID.126, 1699.

    4.    Plaintiff rejects the ALJ's statement that:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the totality of the evidence tells me that the claimant's subjective complaints exceed the available objective records... (PageID.126)

PageID.1700. In this regard,

> The important limitation testified to by Plaintiff was that she must lie down during the day (PageID.90). *There was no evidence contradicting that testimony*. Consequently, the regulations required that the need to lie down be included in the RFC finding.

PageID.1695 (emphasis in original) (footnotes omitted). Plaintiff also stated that, "If the ALJ thinks that nonmention or noncorroboration of a complaint (e.g., the need to lie down) is an 'inconsistency,' that indicates that the ALJ is applying a definition of 'inconsistent' that differs from the definition given in the regulations." PageID.1700.

    5.    Plaintiff rejects the ALJ's statement that " '. . . the record reflects that surgical intervention; injection therapy and prescribed medications provided some symptom relief' (PageID.127)" because the ALJ points to no such inconsistency. PageID.1701.

    6.    Plaintiff rejects the ALJ's statement "that no doctor issued a 'lie-down' restriction (PageID.127)", because "[w]hile such a restriction would have corroborated this complaint, lack of same is lack of corroboration and not the inconsistency the regulations require." PageID.1701.

    7.    Plaintiff rejects the ALJ's statement that " 'I find that the above factors are not consistent with the claimant's subjective pain and functional limitation reports' (PageID.127)."

PageID.1702.  In this regard, plaintiff contends that "Apart from the lack of a lie-down restriction, it is unclear what 'the above factors' refer to".  PageID.1702.

8. Plaintiff rejects the ALJ's statement that " 'Collectively, these factors are somewhat inconsistent with the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms. . .' (PageID.127)."  PageID.1702.

> Here again, the ALJ identifies neither the complaints being rejected nor the evidence supposed to be inconsistent with those complaints. Nor does he attempt to explain how they are inconsistent and why he resolved alleged inconsistencies against Plaintiff. In short, this is a reversibly vague reason.

PageID.1702.  Plaintiff also contends that the ALJ does not understand the applicable regulations, stating that "[t]he ALJ's calling them inconsistent thus shows that he is unaware of the regulatory definition of 'inconsistent.' "  PageID.1702.

Plaintiff contends that her case should be reversed and remanded because the ALJ failed to apply the three-part decision tree and failed to include her need to lie down during the day in the RFC.  Plaintiff contends that "Of the eight elements of the ALJ's analysis of Plaintiff's complaints, six are reversibly vague, two are tainted by legal error (betraying application of a legally unauthorized definition of "inconsistent"), and none establish the genuine inconsistency with substantial evidence which the regulations say must exist before a claimant complaint may be rejected."  PageID.1702-1703.  Next, plaintiff contends that "The invalidity of *any one* of the ALJ's reasons mandates reversal, since it cannot be said that the ALJ would have reached the same conclusion with one of his reasons knocked out. . . . But here *none* of the reasons were sufficient grounds for rejecting Plaintiff's complaints."  PageID.1703 (emphasis in original).  Finally, plaintiff contends that "[m]ore than that, if the ALJ had done what the regulations require, and included Plaintiff's complaints in the RFC, the vocational expert would say that Plaintiff is disabled (PageID.105; lying down during the day eliminates all work)."  PageID.1704.

### 2.    The ALJ's failure to apply the "three-part decision tree"

Plaintiff's claims of error fail because there is no such "three-part decision tree".

As defendant observed:

> Plaintiff parses the regulatory language regarding consideration of symptoms to create a three-part test out of whole cloth. *See* Pl.'s Br. at 3, PageID.1693. Neither the regulation nor SSR 16-3p establish this three-part analysis or create the distinction between corroborating evidence and consistent evidence that Plaintiff relies upon. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. Further, the regulation states that "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." 20 C.F.R. § 404.1529, 416.929. In fact, this Court has held that Plaintiff's specific argument was "without merit" and that "[w]hen evaluating a claimant's statements of subjective pain, the ALJ is required to determine the actual intensity and persistence of the claimant's symptoms and how these symptoms limit the claimant's ability to work." *Simmons v. Comm'r of Soc. Sec.*, No. 1:11-CV-756, 2012 WL 2576784, at *6 (W.D. Mich. June 15, 2012), report and recommendation adopted, 2012 WL 2576087 (W.D. Mich. July 3, 2012). The ALJ properly undertook the evaluation of Plaintiff's subjective allegations and considered whether her allegations of debilitating pain that prevented her from working and required lying down during the day were consistent with the record as a whole. (PageID.124-28).

Defendant's Brief (ECF No. 10, PageID.1718) (footnote omitted).

The Court has rejected the theory advanced in this case that the ALJ must accept a claimant's "complaint" or limitation unless it is directly contradicted by evidence. In addressing this argument in *Pratt v. Commissioner of Social Security*, No. 1:10-cv-438, 2012 WL 5844969 (W.D. Mich. Nov. 19, 2012), the Court stated:

> Contrary to Ms. Pratt's claim, the text of 20 C.F.R. § 404.1529 does not require an ALJ to fully accept a claimant's testimony unless it is directly contradicted by objective evidence in the record. The regulation, which admits that such direct contradiction will be hard to come by, as "symptoms, such as pain, are subjective and difficult to quantify," instead sets up a looser standard. This analysis is not unbounded, however. The regulation clearly states that an ALJ "will not reject your statements . . . solely because the available objective medical evidence does not substantiate your statements." *Id.* § 404.1529(c)(2). But the ALJ here did not do that. He examined the record and set out a logical set of reasons for believing

> that Ms. Pratt's symptoms were not as severe as she claimed. On the basis of that reasoned analysis, the ALJ then declined to fully accept Ms. Pratt's claims.

*Pratt*, 2012 WL 5844969 at *8. *See also, Doornbos v. Comm'r of Soc. Sec.*, No. 1:16-cv-641, 2017 WL 908089 at *5 n.2 (W.D. Mich. March 8, 2017, *affirmed*, No. 17-1464, 2017 WL 8948744 (6th Cir. Dec. 13, 2017) ("Plaintiff's brief argues the standard of review here should be much less deferential and claims that the ALJ was required to adopt all those statements that were not directly contradicted. . . As other courts in this district have held, however, Plaintiff's argument is contrary to the controlling authority identified above and stretches the language of this regulation too far.") (internal quotation marks omitted); *Dewey v. Commissioner of Social Security*, No. 1:16-cv-395, 2017 WL 343627 at *5 (W.D. Mich. Jan. 24, 2017) ("Plaintiff's argument begins by arguing the ALJ's analysis is flawed because the ALJ merely identified a 'lack of corroboration' for Plaintiff's allegations rather than a direct 'contradiction' thereof . . . As other courts in this district have held, however, Plaintiff's argument is contrary to the controlling authority identified above and stretches the language of this regulation too far.") (internal quotation marks omitted); *Foltice v. Commissioner of Social Security*, No. 1:10-cv-602, 2011 WL 4352718 at *14 (Aug. 12, 2011), R&R *adopted*, 2011 WL 4352715 (W.D. Mich. Sept. 16, 2011) ("In support of her argument that the ALJ was required to grant her application for benefits based on her subjective allegations, Plaintiff again argues that the ALJ's analysis is flawed because he merely identified a 'lack of corroboration' for Plaintiff's allegations rather than a direct 'contradiction' thereof. Again, Plaintiff identifies no authority supporting her interpretation of the relevant authority. Plaintiff's argument is likewise contrary to the controlling authority identified above and defies common sense."). Accordingly, plaintiff's claim that the ALJ erred by failing to apply the "three-part decision tree" should be denied.

### 3. Plaintiff's need to lie down

Plaintiff contends that her RFC included the need to lie down during the day, and that if the ALJ had properly included this limitation, then the VE "would say that Plaintiff is disabled (PageID.105; lying down during the day eliminates all work)." Plaintiff's Brief at PageID.1704. Plaintiff has not shown that the ALJ erred by failing to include this limitation. In this regard, the ALJ found that "[w]hile she alleged she needed to lie down most of the day, I note that no evidence from any treating or examining physician established that the claimant had a medically required need to lie down frequently during the day prior to the established onset date." PageID.127. Even if the ALJ had made such a finding, plaintiff's claim mischaracterizes the nature of the VE's testimony. Specifically, plaintiff refers to the testimony of VE David Howorta from the January 22, 2015 administrative hearing (PageID.57-107), as though it was considered by the ALJ on remand in 2018. In fact, the ALJ's 2018 decision is based upon the testimony of VE Dr. Paul Delmar elicited during the September 10, 2018 administrative hearing (PageID.142-164).

During the 2015 administrative hearing, plaintiff testified that she has to lie down one to three hours in a typical day. PageID.90. Her attorney asked VE Howorta, "If [ALJ] Prothro finds the claimant's testimony credible with respect to the need to lay down as frequently as she testified because of the low back and radicular pain, what impact would that have on the jobs you've listed in response to the various hypotheticals?", to which the VE Howarta responded, "That would eliminate all jobs." PageID.105.

During the administrative hearing held on remand on September 10, 2018 (PageID.142-163), plaintiff's counsel asked her "How many times will you lay down and what's the usual length of time that you feel the need to lay down for symptom of pain relief ?". PageID.158. In response, plaintiff testified as follows:

> A normal day okay my normal day is once I – I'm awake I lay in my bed for a little while to make sure I'm not going to fall. I get up, use the restroom. By then usually my daughter is there. She's got coffee going. I'll go sit in my recliner for a while. Asks if I want breakfast. She makes sure all my pills are set for the day. She'll go for a while. She'll bring my grandson back. He'll come and sit on my lap, read me a book or [sic] and then he goes and then we try to get up. I might go sit, read a book if I can. She's been trying to teach me stuff on the computer. So I'm better at it. But by then I'm just exhausted from the medicine. I just want to go lay down. I'm laying there. I don't know an hour, an hour and a half. I can't stand it because I hurt. I've got to get up.

PageID.158-159. Neither plaintiff's counsel nor the ALJ asked for VE Delmar's opinion as to whether plaintiff's testimony given during the 2018 hearing would be work preclusive. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ failed to address regional jobs

Plaintiff contends that the ALJ failed to identify a significant number of jobs in the regional economy that plaintiff could perform under 42 U.S.C. § 423(d)(2)(A), which provides that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

This Court has rejected the argument posited by plaintiff that, "VE [vocational expert] testimony as to jobs nationally is inadequate, since it fails to address jobs in the stated regions," that "if the VE does not testify as to the claimant's own region, then he must identify at least two other regions of the country where the jobs exist in significant numbers," and that the

13

ALJ must also address regions in his decision. PageID.1704. Plaintiff also cited SSR 83-12, which states in part:

> Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country.

SSR 83-12, 1983 WL 31253 at *5 (1983). *See* PageID.1704-1705.

Plaintiff's claim is without merit. "[T]he number of jobs that contributes to the 'significant number of jobs' standard [at step five of the sequential evaluation] looks to the national economy—not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). In *Phillips v. Astrue*, No. 5:10-cv-2651, 2011 WL 5526079 (N.D. Ohio Nov. 14, 2011) the court rejected an argument similar to the one set forth by plaintiff:

> The VE testified that Plaintiff could perform a total of 106,000 jobs in the national economy. (*See* Tr. 48-49.) Work that exists in the national economy is defined as work that exists either in the region where an individual lives or in several regions of the country. *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Plaintiff suggests that this definition requires a VE literally to state numbers of jobs in the "regional" economy as opposed to the "national" economy. This is a *non sequitur*. Plaintiff does not cite, and the Court is not aware of any legal authority that requires a VE to use magic words in his testimony to designate numbers of jobs in the "regional" economy; therefore, the Court is not persuaded that the VE should have done so here. Moreover, there is no reason to assume the VE intended a definition other than that set forth in the regulations.

*Phillips*, 2011 WL 5526079 at *11. For these reasons, plaintiff's claim of error should be denied.

### IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: January 10, 2020                    /s Ray Kent
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).